UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

EMATHIOUS ROBINSON

VERSUS

MITCHELL INTERNATIONAL,
INC. ET AL.

CIVIL ACTION

NO. 14-24-JJB-RLB

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Motions for Summary Judgment (Docs. 61 & 63) brought separately by the defendants, Dr. Allen Krohn ("Dr. Krohn") and Mitchell International, Inc. ("Mitchell International"). The plaintiff, Emathious Robinson ("Robinson"), filed oppositions (Doc. 67 & 69) and the defendants filed reply briefs (Docs. 76 & 80). The parties also submitted supplemental memoranda as directed by the Court (Docs. 94, 95, 99). Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the defendants' Motions for Summary Judgment (Docs. 61 & 63) are **GRANTED**.[1]

### I. BACKGROUND

The plaintiff suffered an injury in a work-related accident while working for Synergy Home Health, and as a result, began to receive workers' compensation benefits. Subsequently, the workers' compensation carrier enlisted the services of the co-defendant Mitchell International to perform a utilization review of the plaintiff's medical care services and treatments for the purpose of determining if continued treatment was medically necessary. Mitchell International employed the defendant Dr. Krohn to conduct this utilization review. Dr.

---

[1] Mitchell International filed a Motion for Summary Judgment (Doc. 64) on its cross-claim against Dr. Krohn. The cross-claim seeks indemnification for liability Mitchell International may incur resulting from Robinson's claims. Because the Court grants the defendants' motions for summary judgment, there is no liability attributed to Mitchell International. Therefore, Mitchell International's Motion for Summary Judgment on Cross-Claim (Doc. 64) is **MOOT**.

1

Krohn reviewed the plaintiff's medical records and issued a written utilization report ("the Report"), noting in part that the plaintiff exhibited "opioid drug seeking behavior." *Report*, Doc. 61-3. The Report was signed by Dr. Krohn, and forwarded through Mitchell International to the Louisiana Workforce Commission Corporation ("LWCC"), Michael Davis (Robinson's attorney), Jorge E. Isaza (Robinson's treating physician), Moreau Physical Therapy (Robinson's physical therapist) and Robinson. *Id.* at 9. After receiving the Report, the plaintiff self-reported the findings to the Louisiana State Board of Nursing ("Nursing Board"). *Robinson Dep.* 121:2–123:21, Doc. 61-12.

After Robinson self-reported the findings in the Report, the Nursing Board sent a letter to Robinson informing her that she may have acted in violation of the Nurse Practice Act for failing to disclose her medical/physical condition to the Nursing Board in relation to license renewal applications in 2011, 2012, and 2014. *Letter from Miranda L. Christopher, Compliance Investigator, La. State Bd. of Nursing, to Emathious Robinson* 1 (Dec. 10, 2014), Doc. 61-11. The Nursing Board's letter specifically noted Robinson's inability to work after being placed on workers' compensation from a July 27, 2011 accident, and Dr. Krohn's statement in the Report that Robinson had "opioid drug seeking behavior." *Id.* Robinson has not returned to work since the accident, nor has she applied for any jobs since Dr. Krohn issued the Report.

The plaintiff filed suit against Dr. Allen Krohn and Mitchell International contending that Dr. Krohn defamed her in a written report that stated she exhibited "opioid drug seeking behavior." The defendants removed the case to this Court based on diversity jurisdiction. This Court previously denied a Motion for Summary Judgment filed on behalf of Dr. Krohn, finding that it was premature based on Plaintiff's contention that discovery had not yet been conducted. *See Ruling* 4, Doc. 37. On February 12, 2015, Plaintiff filed a Motion to Modify Scheduling

2

Order (Doc. 53) due to a need to conduct further discovery regarding the damages aspect of her claim in relation to the Nursing Board's disposition on the ongoing disciplinary matters. This Court granted the Motion in part and extended fact discovery through May 18, 2015, the deadline to disclose and provide expert reports to June 1, 2015, and expert discovery through June 15, 2015. *See Order*, Doc. 54. These deadlines have now passed.

The defendants have now filed separate motions for summary judgment, asserting that the plaintiff failed to meet her burden of establishing the requisite elements of defamation under Louisiana law.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–

40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322–23.

**III.   DISCUSSION**

Under Louisiana law, five elements are necessary to establish a claim for defamation: (1) defamatory statement concerning another; (2) falsity of the statement; (3) an unprivileged publication to a third party; (4) fault (negligence or greater) on the part of the publisher; and (5) resulting injury. *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004). If even one of the required elements of the tort is lacking, the cause of action fails. *Id.* at 140. As such, summary judgment is appropriate if the plaintiff is unable to establish any one of these elements. *See Daigle v. Computrac*, 835 F. Supp. 903, 906 (E.D. La. 1993). Additionally, even if the plaintiff is successful in showing the essential elements of defamation, "recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified." *Costello*, 864 So. 2d at 141. The defendants dispute all five elements of the plaintiff's cause of action.

The threshold issue in a defamation action is whether the words complained of are defamatory. *Id.* In Louisiana, defamatory words are traditionally classified into two categories: words that are defamatory *per se* and statements that are susceptible to a defamatory meaning. *Id.* Words that "expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances are considered defamatory *per se*." *Id.* Statements susceptible

4

to a defamatory meaning are "words that tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person or otherwise expose a person to contempt and ridicule," and convey an element of personal disgrace, dishonesty or disrepute. *Id.* Statements are also defamatory if the words taken in context, tend to "to deter others from associating or dealing with the person, or to deprive the person of public confidence in his or her occupation." *Id.* Whether a particular statement "is *objectively* capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener." *Bell v. Rogers*, 698 So. 2d 749, 754 (La. Ct. App. 1997) (quoting *Kosmitis v. Bailey*, 685 So. 2d 1177, 1180 (La. Ct. App. 1996)). The Court assumes, for the purposes of this ruling, that the statement at issue was defamatory.

Nonetheless, not all defamatory statements are actionable. *Fitzgerald v. Tucker*, 737 So. 2d 706, 716 (La. 1999). A statement of opinion that is based totally on the speaker's subjective view and does not expressly state or imply the existence of underlying facts is not actionable under Louisiana law. *Bussie v. Lowenthal*, 535 So. 2d 378, 381 (La. 1988); *Mashburn v. Collin*, 355 So. 2d 879, 885–86 (La. 1977). However, if a statement of opinion is accompanied by an express statement of fact, that express statement of fact may be actionable if it is defamatory, false, and concerns another. Moreover, if a statement of opinion implies that certain facts exist, then such a statement, even though couched in terms of an opinion, may give rise to a defamation action if the implied factual assertions are defamatory and false. *Id.*

The distinction between a statement of fact and a statement of opinion is "difficult to state in abstract terms." *Id.* at 885. The distinction "depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's

or writer's opinion, or as a statement of existing fact." *Id.* The Louisiana Supreme Court has offered guidance to ascertaining whether a statement is one of opinion or fact:

> The opinion may be ostensibly in the form of a factual statement if it is clear from the context that the maker did not intend to assert another objective fact but only his personal comment on the facts which he had stated. *An expression of opinion occurs when the maker of the comment states the facts on which his opinion of the plaintiff is based and then expresses a comment as to the plaintiff's conduct, qualifications or character*; or when both parties to the communication know the facts or assume their existence and the comment is clearly based on the known or assumed facts in order to justify the comment. . . .
>
> *In determining whether an expression is a statement of fact or opinion under the common law, words must be read in their context. Words which, taken by themselves, would appear to be a positive allegation of fact, may be shown by the context to be a mere expression of opinion or argumentative influence*. On the other hand, if a statement, ostensibly in the form of an opinion, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication, the expression gives rise to the inference there are undisclosed facts that justify the opinion. In such a case the expression, although in the form of an opinion, in reality implies a statement of fact, which is not usually protected by the common law privilege. In order for a statement to be defended as fair comment it must be recognizable by the ordinary reasonable person as opinion and not as a statement of fact

*Id.* at 885–86 (emphasis added).

In the Report, Dr. Krohn begins by stating the facts on which his opinion is based and then expresses a comment on the facts which he has stated. Dr. Krohn starts the Report by outlining the facts. *Report* 2, Doc. 61-3. He states that he contacted Robinson's treating physician and learned that "[Robinson] is now in more pain than when she initially started PT because she ran out of pain medication. Reports sharp pains and numbness intermittently into her UE's." *Id.* at 3. Dr. Krohn then reviews a report from Robinson's physical therapists, which stated, "Patient still presenting with high subject reactivity. Subjective reports of pain do not necessarily reflect objective reports. For example, when measuring lumbar flexion, patient reports that she is only able to bend forward 24 degrees; however, she was witnessed bending down past that during treatment." *Id.* Finally, Dr.

6

Krohn reviewed an exam note from Dr. Jorge Isaza that indicated Robinson sought higher dosages of Lortab. *Id.* Dr. Krohn then states in the Report:

> MD Rationale/Criteria Applied: In review of the records, I can find no rationale from any of the doctors. . . . Based on past 24 sessions of therapy did not improve functional ability, provider requesting for excessive passive modalities, patient is still not working almost one year since injury date, *apparent exaggeration of functional limitations/symptoms, and opioid drug seeking behavior*, the patient is clearly not making progress the services do not meet OWCA treatment guideline recommendations.

*Report* 3, Doc. 61-3 (emphasis added). After reviewing the context, it is clear that Dr. Krohn used the term "opioid drug seeking behavior," not as an assertion of an objective fact, but only as his personal comment on the facts which he had stated. The facts Dr. Krohn stated he relied upon to form his opinion are not argued to be false or defamatory. Thus, as a pure expression of opinion, made after disclosing non-defamatory facts upon which the opinion is based, the statement in the Report is not actionable. *Bussie*, 535 So. 2d at 381. Because the plaintiff has failed to establish the first element of her cause of action for defamation, summary judgment is appropriate. *Daigle*, 835 F. Supp. at 906.

While the Court finds that the statement in the Report is not actionable under Louisiana law, the Court additionally notes that the plaintiff has come forth only with evidence of general damages, such as mental anxiety and stress, caused by the statement contained in the Report being communicated to Mitchell International, LWCC, Dr. Isaza, and Moreau Physical Therapy.[2] The plaintiff has not come forth with any evidence of special damages caused by those entities receiving the Report. Additionally, even if the statement were actionable, any damages (both special damages and general damages) caused by the Nursing Board investigation are not recoverable because Robinson herself communicated the statement to the Nursing Board, and

---

[2] The Court makes no finding as to whether such "publication" is protected by a qualified privilege.

7

Louisiana does not recognize the doctrine of compelled defamation.[3] Accordingly, at most, the plaintiff has come forth only with evidence of general damages, such as mental anxiety and stress, caused by the defendants' publication of the Report to Mitchell International, LWCC, Dr. Isaza, and Moreau Physical Therapy.[4]

---

[3] Under Louisiana law, the "publication" element of defamation requires the plaintiff to prove that the defendant(s) communicated a non-privileged defamatory statement to any person other than the defamed party. 12 LA. CIV. L. TREATISE, TORT LAW § 17:7 (2d ed.); *Costello*, 864 So. 2d at 142. The plaintiff must prove that the defendants themselves communicated the defamatory statements to third parties. If it is the plaintiff, not the defendants, who communicated the offending statement to a third party, there is no publication. *Parsons v. Gulf & S. Am. S.S. Co.*, 194 So. 2d 456, 457 (La. Ct. App. 1967); 12 LA. CIV. L. TREATISE, TORT LAW § 17:7 (2d ed.). The Court has not found any Louisiana case recognizing the doctrine of compelled self-publication, nor has the plaintiff cited any such case. The Louisiana courts that have considered this doctrine have implicitly rejected it. *Daigle*, 835 F. Supp. at 907 (citing *Gilliland v. Feibleman's, Inc.*, 108 So. 112, 114 (La. 1926) ("Publication is the essence of slander; and where alleged slanderous statement has not been communicated to a third person, except by the plaintiff, there is no slander.")); *Parsons*, 194 So. 2d at 457 ("Clearly, any publication of the statement made by the plaintiff himself is not actionable. It is essential that the publication be by the defendant."). At least two federal courts have had occasion to recognize the doctrine of compelled defamation in Louisiana, but elected not do to so because "without a clear indication from the state courts," a federal court should be "unwilling to unilaterally adopt a theory that departs so significantly from the orthodoxy of more settled defamation law." *Daigle*, 835 F. Supp. at 908; *Klaimon v. Cigna Co.*, No. 95-3597, 1997 WL 79292, at *3 (E.D. La. Feb. 24, 1997), *aff'd per curiam*, 138 F.3d 952 (5th Cir. 1998). The plaintiff has come forth with no evidence demonstrating that any person other than the plaintiff herself communicated the defamatory statement to the Nursing Board. In fact, the evidence establishes that it was only the plaintiff herself who communicated the statements to the Nursing Board. Therefore, any damages caused by her self-publication to the Nursing Board, including damages associated with the Nursing Board's investigation, are not recoverable under Louisiana law.

[4] Injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish, even when no special damage such as loss of income is claimed. *Costello*, 864 So. 2d at 141. Even when no special damages are claimed and the defamatory statements have had little or no adverse effect on the plaintiff's reputation, damages are recoverable for the plaintiff's own embarrassment, humiliation, anxiety or hurt feelings resulting from the defamation. *Id.* Regardless of the type of injury asserted, however, the plaintiff must present competent evidence of the injuries suffered. *Id.* The plaintiff must also show a causal connection between the defendant's conduct and the injuries, that is, that the defamatory statements were a "substantial factor in causing the harm." *Bell v. Rogers*, 698 So. 2d 749, 754–55 (La. Ct. App. 1997).

The evidence demonstrates that the plaintiff has not suffered special damages. Prior to the accident that gave rise to the plaintiff's workers' compensation claim, she had been working with Synergy for approximately 4–5 months. *Robinson Dep.* 24:9–13, Doc. 61-12. Since the accident, Robinson has not returned to work nor has she applied for a job. *Id.* at 128:11–12. In her deposition, the plaintiff stated that the defamatory statement in the Report "hasn't affected me being able to get a job." *Id.* at 125:11–12, 128:8–15. Similarly, there is no evidence indicating that the plaintiff has suffered damages in the form of reputational harm in the community as a result of the publications of the defamatory statement to her treating physician and physical therapist. At her deposition, Robinson stated that she has not encountered anyone in the medical profession, aside from her treating physicians, who had knowledge of the alleged defamatory statement. *Id.* at 129:1–130:7.

The plaintiff has come forth with evidence of nonpecuniary and general damages such as personal humiliation, embarrassment, and mental anguish caused by the Report. The plaintiff testified in her deposition as to her embarrassment, worry, humiliation, anxiety, high blood pressure, lack of sleep, and hurt feelings from the statement's effect on her career given the possible loss of her nursing license. *Robinson Dep.* 170–172, Doc. 61-12. The plaintiff also submitted her psychologist's notes which corroborate Robinson's testimony. *See Dr. Fidanza's Records*, Doc. 99-2.

**IV.   CONCLUSION**

For the reasons stated above, the plaintiff has failed to meet her burden to prove that she has an actionable defamation claim because the statement complained of is a statement of opinion. Therefore, there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. Accordingly, the defendants' Motions for Summary Judgment (Docs. 61 & 63) are **GRANTED**. Additionally, Mitchell International's Motion for Summary Judgment on Cross-Claim (Doc. 64) is **MOOT**.

Signed in Baton Rouge, Louisiana, on February 1, 2016.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**